UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FAITH CONSTRUCTION 4, INC., and ANNOINTED DEVELOPMENT INC., <br><br> Plaintiffs, <br><br> v. <br><br> THOMAS W. GIROUARD, STEVEN T. CHO, FRANCES HOFBAUER, LISA L. FINLAY, and ALL-BRY CONSTRUCTION COMPANY, <br><br> Defendants. | No. 14 CV 2886 <br><br> Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

The Chicago Park District requires that a portion of the money it spends on construction contracts be awarded to minority-owned businesses. General contractors must report how much work has been and will be performed by minority-owned subcontractors, and how much those subcontractors have been and will be paid. Plaintiff Faith Construction 4, Inc., is a minority-owned subcontractor, and plaintiff Annointed Development Inc. is a joint venture between Faith and another company. Defendant All-Bry is a general contractor, and the individual defendants are All-Bry employees. On certain jobs for the Park District, plaintiffs worked as subcontractors for All-Bry.

In this suit, plaintiffs allege that All-Bry won contracts and obtained payments from the Park District by fraudulently inflating the amount of money it was paying to minority-owned subcontractors. Plaintiffs assert a claim under the Racketeer Influenced and Corrupt Organizations Act, and a claim under common-

law fraud. In three separate motions, defendants move to dismiss. For the reasons below, the motions to dismiss are granted.

## I. Legal Standards

Plaintiffs' complaint was filed in Illinois state court (in the Circuit Court of Cook County), before being removed to this court.[1] The Federal Rules of Civil Procedure apply "to a civil action *after* it is removed from a state court." Fed. R. Civ. P. 81(c)(1) (emphasis added). Neither side has argued for or against dismissal on the basis that Illinois pleading standards, as opposed to federal standards, should apply. In particular, plaintiffs acquiesce to the application of Federal Rules of Civil Procedure 12(b)(6) and 9(b), and federal case law interpreting those rules. [30] at 4–5, 11, 18. I therefore apply federal standards. *See G&S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 537–38 (7th Cir. 2012) (declining to decide whether state pleading rules apply to a complaint removed to federal court, where the parties acquiesced to the application of federal rules).

In deciding whether to dismiss a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, I construe the complaint in the light most favorable to plaintiffs, accept as true all well-pleaded facts, and draw reasonable inferences in their favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). Statements of law, however, need not be accepted as true. *Id*. To avoid dismissal, the complaint must "state a claim to relief that is plausible on its face." *Id*. (quoting *Bell Atl. Corp.*

---

[1] The case was removed by defendants All-Bry and Girouard, pursuant to 28 U.S.C. §§ 1331 and 1441(a), based on the federal question presented in Count I. Count II is a state-law claim, over which this court has supplemental jurisdiction.

*v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Yeftich*, 722 F.3d at 915 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal marks omitted). Where a claim for relief sounds in fraud, a heightened pleading standard applies. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 949–50 (7th Cir. 2013) (citing Fed. R. Civ. P. 9(b)). A party alleging fraud must state its claim with particularity, including the "who, what, when, where, and how" of the fraud. *Beyrer*, 722 F.3d at 950. Malice, intent, or knowledge may be alleged generally. Fed. R. Civ. P. 9(b).

## II. Facts[2]

The Chicago Park District awards contracts to vendors for various services, including construction. Complaint ¶ 11. The Park District requires that at least 25% of the money it spends on any construction contract goes to one or more minority-owned businesses. Complaint ¶ 30. General contractors that bid for projects with the Park District are required to submit affidavits committing to comply with that policy. Complaint ¶ 54. General contractors must identify the specific minority-owned businesses that will provide goods or services for the project, and must

---

[2] The facts are taken from the complaint [1-2], which is cited as "Complaint."

3

submit letters of intent signed by representatives of those minority-owned businesses. Complaint ¶¶ 56–57. The letters of intent must specify the amounts to be paid for the goods or services. Complaint ¶ 57.

Defendant All-Bry is a general contractor, and the individual defendants are All-Bry employees. Complaint ¶ 4–9.³ Plaintiff Faith is a minority-owned subcontractor. Complaint ¶¶ 1, 53. Plaintiff Annointed Development, whose purpose was to ensure that Faith had access to trucks when needed, was a joint venture between Faith and another company. Complaint ¶ 2.

All-Bry obtained contracts with the Park District by representing that Faith—a minority-owned business—would be given a certain amount of the work (and money). On those contracts, All-Bry sought payment from the Park District by representing that Faith had done a certain amount of work, and had been and would be paid accordingly. Plaintiffs allege that in order to obtain and retain its contracts, and to receive payments on those contracts, All-Bry lied to the Park District, inflating the amount of money being paid to minority-owned subcontractors. Plaintiffs allege that All-Bry did so by forging the signature of Faith's owner on documents submitted to the Park District.⁴ By forging the owner's

---

³ Girouard is All-Bry's president, secretary, treasurer, sole director, and sole shareholder. Complaint ¶ 5. Hofbauer is Girouard's secretary. Complaint ¶ 8. Finlay is Hofbauer's secretary. Complaint ¶ 9. Cho is a superintendent, engineer, and project manager. Complaint ¶ 6.

⁴ For brevity and clarity, I have synthesized the complaint's specific allegations. The complaint is 89 pages long, with 262 separate numbered paragraphs (and some unnumbered paragraphs). As the Seventh Circuit has noted, "length may make a complaint unintelligible, by scattering and concealing in a morass of irrelevancies the few allegations that matter[.]" *Kadamovas v. Stevens*, 706 F.3d 843, 844 (7th Cir. 2013) (citing *United*

4

signature, All-Bry could obtain more money from the Park District than it would remit to Faith, and neither Faith nor the Park District would discover the inconsistency.[5] Plaintiffs contend that they have been damaged in an amount equal to the difference between (1) what All-Bry told the Park District it was paying plaintiffs and (2) what it actually paid them.

## III. Analysis

### A. Count I: RICO

In Count I, plaintiffs assert a civil claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq*. The Supreme Court has explained the structure of such a claim:

> RICO provides a private cause of action for any person injured in his business or property by reason of a violation of [18 U.S.C.

---

*States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003)); *see also Stanard v. Nygren*, 658 F.3d 792 (7th Cir. 2011). Defendants do not seek dismissal on the grounds of prolixity, and plaintiffs filed their complaint in state court, therefore the motions should be considered on the merits.

  The detail in the complaint is largely based on recitations of various payments and projects related to the parties' relationship. In Count I, paragraphs 14 through 27 total up plaintiffs' alleged underpayments for 2009 and 2010. Paragraphs 58 through 92 relate to work done around January 2009, in Lane Beach Park. Paragraphs 93 through 108 relate to work done around March 2009, involving Brand Park, Dickinson Park, and Rosedale Park. Paragraphs 109 through 121 relate to work done around April 2009, on Owens Playground. Paragraphs 122 through 130 relate to work done around February 2009, in Riis Park. Paragraphs 131 through 139 relate to work done around March 2009, in Skinner Park. Paragraphs 141 through 148 relate to work done around August 2009, in Erie Park. Many of those allegations are repeated in substance in Count II. Additionally in Count II, projects are referenced involving (1) Moraine Valley Community College; (2) James Thorp Elementary School; (3) Summit Elementary School; and (4) the Art Institute of Chicago.

[5] In addition to alleging forged signatures, plaintiffs allege (perhaps somewhat inconsistently) that (1) All-Bry bribed officials at the Park District to ignore obvious flaws in All-Bry's paperwork, Complaint ¶¶ 64, 97; and (2) All-Bry told Faith about the difference between what it received from the Park District and what it would pay Faith, but said that the difference was just the "cost of doing business" with All-Bry, Complaint ¶ 90.

5

> § 1962]. Section 1962, in turn, contains RICO's criminal provisions. Specifically, § 1962(c), which the [plaintiff] invokes here, makes it unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. Racketeering activity is defined to include a number of so-called predicate acts, including the two at issue in this case—mail and wire fraud.

*Hemi Group, LLC v. City of New York*, 559 U.S. 1, 6 (2010) (internal marks omitted). Like the plaintiff in *Hemi Group*, plaintiffs here assert that acts of mail fraud are the necessary "predicate acts." The acts of mail fraud occurred when All-Bry employees allegedly mailed false forms to the Park District, either to win contracts or to obtain payments under existing contracts.

To state a claim under RICO, a plaintiff must plausibly allege that "a RICO predicate offense not only was a 'but for' cause of his injury, but was the proximate cause as well." *Hemi Group*, 559 U.S. at 9 (some internal marks omitted). For RICO purposes, proximate cause is only found where a plaintiff's harm results directly from the defendant's predicate acts. *Id*. at 17–18. For example, in *Hemi Group*, the City of New York sued an out-of-state online seller of cigarettes for failing to report its sales to New York residents, as was required by law. The City argued that it was harmed because without such reporting, it would not collect all the taxes it was owed by its residents. The Supreme Court rejected those allegations as too remote to satisfy the proximate cause requirement. *Id*. at 9.

As another example, in *Anza v. Ideal Steel Supply Corporation*, 547 U.S. 451 (2006), the plaintiff sued its competitor for failing to collect sales tax. The plaintiff alleged that by not collecting tax, the defendant was able to undercut the plaintiff's

prices and thereby steal the plaintiff's customers. The Supreme Court held that harm was too "attenuated" to state a claim under RICO. *Id.* at 459; *see also id.* at 458 ("The direct victim of this conduct was the State of New York, not Ideal. It was the State that was being defrauded and the State that lost tax revenue as a result."). The Court found that the defendant's offering of lower prices was "entirely distinct" from its defrauding of the State. *Id.* at 460–61.

And in *Holmes v. Securities Investor Protection Corporation*, 503 U.S. 258 (1992), the plaintiff alleged that the defendants had manipulated stock prices. The plaintiff insured certain registered broker-dealers: if the broker-dealers did not meet their financial obligations to their customers, the plaintiff would reimburse those customers. Because of the defendants' stock manipulation, stock prices collapsed and broker-dealers did not meet their obligations. The plaintiff, as the insurer, paid $13 million to the broker-dealers' customers, and thus contended that it was proximately harmed by the defendants. The Supreme Court rejected the harm as too remote—the alleged conspiracy directly harmed only the broker-dealers, while the plaintiff's harm was "purely contingent" on that harm and thus "too remote" to satisfy RICO's direct relationship requirement. *Id.* at 271.

In the present case, plaintiffs' theory of harm is unclear. If All-Bry inflated the amount of work that plaintiffs had done, and thus how much money they were owed, then any fraudulently received money would belong to the Park District, not plaintiffs. If, on the other hand, plaintiffs actually did the amount of work that All-Bry told the Park District they did, it is unclear how All-Bry's reports were

7

fraudulent. Reading the complaint in the light most favorable to plaintiffs, and drawing all reasonable inferences in their favor, it is possible that (1) All-Bry correctly reported how much work plaintiffs had done, and therefore how much money plaintiffs were owed in total; but (2) inflated how much money plaintiffs had already been paid. But even in that case, plaintiffs' harm would flow simply from All-Bry underpaying them, not from All-Bry lying to the Park District. Neither the complaint nor plaintiffs' response brief suggests how their entitlement to payment from All-Bry relates directly to All-Bry's alleged fraud on the Park District. Because the Supreme Court has repeatedly made clear that a direct relationship is required, plaintiffs have failed to state a RICO claim against All-Bry, and Count I is dismissed.[6] The claim is dismissed without prejudice. *See Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) (leave to amend should be freely given and is especially advisable after dismissal of the first complaint).

### B. Count II: Common-Law Fraud

I would decline to exercise supplemental jurisdiction over the state-law claim after dismissing the federal claim. *See RWJ Mgmt. Co. v. BP Prods. N. Am.*, 672 F.3d 476, 479–80 (7th Cir. 2012). But, because the dismissal of Count I is without

---

[6] Defendants raise additional arguments in favor of dismissing Count I: (1) insufficient allegations of an "enterprise"; (2) expiration of the statute of limitations; (3) insufficient particularity of the pleadings; and (4) lack of a "pattern of racketeering." Because Count I is dismissed in its entirety on the grounds that plaintiffs have not plausibly alleged they were directly harmed by defendants' predicate acts, I do not reach defendants' additional arguments except to note that the allegations against individual defendants Finlay and Cho are particularly threadbare, such that the claims against them could alternatively be dismissed under Rules 8 and 9(b).

8

prejudice, a review of the state-law fraud claim is appropriate. Count II asserts a claim for common-law fraud under Illinois law. "A claim of common-law fraud under Illinois law requires proof of five elements: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from the reliance on the statement." *Massuda v. Panda Express, Inc.*, 759 F.3d 779, 783 (7th Cir. 2014).

The complaint repeatedly refers to defendants' inflated reports concerning how much money was being paid to minority-owned subcontractors. These false statements were made to the Park District, not plaintiffs. Plaintiffs did not rely on them. (To the contrary, plaintiffs say they were unaware of them.) Nor did defendants intend for plaintiffs to act on such statements. (To the contrary, defendants concealed the statements from plaintiffs. *See* [30] at 3.) And even if plaintiffs had learned of the inflated reports, they could not plausibly have relied on them, as they would have known they were false (because plaintiffs knew how much they had been paid).

In response to these points, plaintiffs state that the false statements constituting fraud were not the reports to the Park District, but rather were defendants' repeated "promise[s] to pay the contract amount for the subcontract work performed once that work was performed." [30] at 15. But in the complaint's 262 paragraphs, the vast majority—if not all—of the allegedly false statements are ones made to the Park District, not to plaintiffs. Indeed, while some portions of

9

plaintiffs' response brief cite to specific paragraphs of the complaint, that is not true of the section defending Count II. *See* [30] at 18–19. In short, the argument plaintiffs advance in their response brief does not match their complaint. Plaintiffs may not amend their complaint through their response brief. *See Smith v. Union Pac. R.R. Co.*, 474 Fed.Appx. 478, 480 (7th Cir. 2012); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Comp.*, 631 F.3d 436, 448 (7th Cir. 2011).[7] Accordingly, Count II is dismissed. This dismissal is without prejudice.

---

[7] Further, the general rule in Illinois is that promises to perform future conduct do not support a claim of fraud. *Steinberg v. Chicago Medical School*, 69 Ill.2d 320, 334 (1977). There is an exception where the false promise is the scheme employed to accomplish the fraud. *Id*. The line separating cases that fall within the general rule from those that fall within the exception is far from clear. *See, e.g.*, *Commonwealth E. Mortgage Co. v. Williams*, 163 Ill.App.3d 103, 113–14 (1st Dist. 1987) ("Distinguishing between the general rule and the exception to the rule, however, is not an easy task."). At a minimum, "to fall within the exception, a party must allege sufficient facts from which a scheme can be inferred." *Id*. Illinois courts dismiss such claims if the alleged scheme to defraud is insufficiently specified. *See, e.g.*, *Ringgold Capital IV v. Finley*, 373 Ill. Dec. 235, 246–47 (1st Dist. 2013); *Chatham Surgicore, Ltd. v. Health Care Serv. Corp.*, 356 Ill.App.3d 795, 805 (1st Dist. 2005). As explained above, the complaint focuses on false statements made to the Park District, not to plaintiffs. Accordingly, plaintiffs do not adequately plead a false promise made to plaintiffs that was part of a scheme to defraud plaintiffs.

## IV. Conclusion

For the foregoing reasons, defendants' motions to dismiss [18], [20], [27] are granted. The complaint is dismissed without prejudice. If plaintiffs do not seek leave to replead by December 15, 2014, this dismissal will automatically convert to a dismissal with prejudice.[8]

ENTER:

/s/ Manish S. Shah

Manish S. Shah
United States District Judge

Date: 11/21/14

---

[8] As mentioned above, a court may "dismiss a complaint that is so long that it imposes an undue burden on the judge, to the prejudice of other litigants seeking the judge's attention." *Kadamovas*, 706 F.3d at 844. Further, "length may make a complaint unintelligible, by scattering and concealing in a morass of irrelevancies the few allegations that matter[.]" *Id.* (citing *Garst*, 328 F.3d at 378). *See also Stanard*, 658 F.3d 792. If plaintiffs seek leave to file an amended complaint, they must follow Rules 8 and 9 of the Federal Rules of Civil Procedure.